CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
KYRA NICKELL (Bar No. 328816)
(E-Mail: Kyra_Nickell@fd.org)
JAKE CRAMMER (Bar No. 329928)
(E-Mail: Jake_Crammer@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
JOSE ANTONIO BONILLA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:25-CR-00259-WLH |
| Plaintiff, | **DEFENDANT'S MOTION TO DISMISS INFORMATION UNDER 8 U.S.C. § 1326(d); MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS** |
| v. | |
| JOSE ANTONIO BONILLA, | **Hearing Date: May 28, 2025** |
| Defendant. | |

Defendant Jose Antonio Bonilla, by and through his attorneys Deputy Federal Public Defenders Kyra Nickell and Jake Crammer, hereby moves this Court for an order dismissing the information under 8 U.S.C. § 1326(d).

///

///

1

2        This motion is based on the arguments and exhibits contained herein, and any

3    other facts and records in this case.

4

5                                    Respectfully submitted,

6                                    CUAUHTEMOC ORTEGA

7                                    Federal Public Defender

8

9    DATED:  May 14, 2025        By  */s/ Kyra Nickell*

10                                   KYRA NICKELL
                                     JAKE CRAMMER
11                                   Deputy Federal Public Defender
                                     Attorneys for JOSE ANTONIO BONILLA
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

1  I. INTRODUCTION ...................................................................... 1

2  II. STATEMENT OF FACTS .......................................................... 1

3  III. ARGUMENT ............................................................................. 3

    A.    Legal Framework ................................................................ 3

    B.    Multiple defects in Mr. Bonilla's Immigration Proceedings Violated
    Due Process and Resulted in Fundamental, Prejudicial Unfairness
    under 8 U.S.C. § 1326(d)(3). ............................................... 4

        a.    USCIS violated Mr. Bonilla's due process rights by behaving
        with deliberate indifference in wrongfully withdrawing his TPS ..... 4

        b.    USCIS behaved with deliberate indifference ..................... 5

            (1)    *Objectively substantial risk of harm* ................. 5

            (2)    *Awareness of facts from which an inference of
                 substantial risk of harm could be drawn* ............. 5

            (3)    *Reasonable official would have been compelled to
                 draw inference* ................................................ 6

            (4)    *USCIS actually drew the inference* ................... 7

        c.    Mr. Bonilla suffered prejudice due to USCIS's deliberate
        indifference in wrongfully withdrawing his TPS application .......... 8

        d.    The Immigration Court violated Mr. Bonilla's due process rights
        by improperly denying Mr. Bonilla his right to cross-examine
        witnesses. .......................................................... 9

        e.    Absent these Due Process violation, Mr. Bonilla might have
        plausibly been granted Temporary Protected Status .............. 13

    C.    Mr. Bonilla Satisfies the Requirements of Exhaustion Under
    Section 1326(d)(1). ........................................................ 14

    D.    Mr. Bonilla was Deprived of Judicial Review Under
    Section 1326(d)(2). ........................................................ 14

i

# TABLE OF CONTENTS

Page

IV. CONCLUSION ............................................................................................... 16

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alcaraz-Enriquez v. Garland*,
  19 F.4th 1224 (9th Cir. 2021)....................................................9, 10, 12, 13

*Alonso-Juarez v. Garland*
  80 F.4th 1039 (9th Cir. 2023)..........................................................15

*Brown v. Holder*,
  763 F.3d 1141 (9th Cir. 2014)...........................................................4

*Brown v. Lynch*,
  831 F.3d 1146 (9th Cir. 2016)....................................................4, 5, 6

*Ching v. Mayorkas*,
  725 F.3d 1149 (9th Cir. 2013)...........................................................9

*Cinapian v. Holder*,
  567 F.3d 1067 (9th Cir. 2009)...........................................................9

*Cunanan v. INS*,
  856 F.2d 1373 (9th Cir. 1988).........................................................10

*Dent v. Sessions*,
  900 F.3d 1075 (9th Cir. 2018)........................................................4, 8

*Grigoryan v. Barr*,
  959 F.3d 1233 (9th Cir. 2020)...........................................................9

*Magtanong v. Gonzales*,
  494 F.3d 1190 (9th Cir. 2007).........................................................14

*Martin-Mendoza v. INS*,
  499 F.2d 918 (9th Cir. 1974)............................................................9

*Nicanor-Romero v. Mukasey*,
  523 F.3d 992 (9th Cir. 2008)............................................................6

*Saidane v. INS*,
  129 F.3d 1063 (9th Cir. 1997)...................................................10, 11, 13

*Santos-Zacaria v. Garland*,
  598 U.S. 411 (2023).....................................................................15

iii

## TABLE OF AUTHORITIES

Page(s)

*United States v. Baza-Martinez,*
  464 F.3d 1010 (9th Cir. 2006) ....................................................................6

*United States v. Mendoza-Lopez,*
  481 U.S. 828 ...............................................................................................3

*United States v. Ortiz-Lopez,*
  385 F.3d 1202 (9th Cir. 2004) ....................................................................3

*United States v. Pallares-Galen,*
  359 F.3d 1088 (9th Cir. 2004) ....................................................................6

*United States v. Palomar-Santiago,*
  593 U.S. 321 (2021).....................................................................................14

*United States v. Portillo-Gonzalez,*
  80 F.4th 910 (9th Cir. 2023) .................................................................14, 15

*United States v. Vidal-Mendoza,*
  705 F.3d 1012 (9th Cir. 2013) ....................................................................7

*Zolutukhin v. Gonzalez,*
  417 F.3d 1073, 1076 (9th Cir. 2005) ......................................................4, 8

**Federal Statutes**

8 U.S.C. § 1254a(c)(2)(B)(ii)...........................................................................7

8 U.S.C. § 1326 ...........................................................................................1, 3

8 U.S.C. § 1326(d) .....................................................................................1, 13

8 U.S.C. § 1326(d)(1)-(3) ................................................................................3

8 U.S.C. § 1326(d)(3) ...................................................................................3, 4

8 USC § 1158(b)(2)(A)(ii) ...............................................................................7

8 USC § 1158(b)(2)(B)(i) ................................................................................7

8 USC § 1252(b)(1) .......................................................................................15

8 USC § 1254a(a)(1)(a) ...................................................................................8

8 USC § 1254a(a)(1)(A), (B)...........................................................................5

# TABLE OF AUTHORITIES

Page(s)

8 USC § 1254a(a)(1)(B) ................................................................................. 8

8 USC § 1326(d)(2) ..................................................................................... 14

INA 101(a)(43)(A) ........................................................................................ 2

**State Statutes**

California Penal Code § 647.6(a) ............................................................. 6, 7

**Regulations**

8 CFR § 244.14 ............................................................................................ 5

8 CFR § 244.14(a)(1)-(3) ............................................................................ 6

8 CFR § 244.14(b)(2) ................................................................................... 5

8 CFR § 244.18(b) ........................................................................................ 8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

On April 8, 2025, the government indicted Mr. Bonilla on the charge of illegal reentry in violation of 8 U.S.C. § 1326, alleging that he was found in the Central District of California after having previously been removed from the United States on January 15, 2021. *See* Dkt 16. However, the underlying removal order cannot stand, because Mr. Bonilla launches a valid collateral challenge to his removal order under section 1326(d). In at least two instances, DHS violated Mr. Bonilla's due process rights. Prior to the removal proceedings, USCIS violated Mr. Bonilla's due process rights by behaving with deliberate indifference in wrongfully withdrawing Mr. Bonilla's TPS—which prompted the start of removal proceedings. At those proceedings, the Immigration Judge ("IJ") followed suit and violated Mr. Bonilla's due process rights by denying Mr. Bonilla his right to cross-examine witnesses. Mr. Bonilla was prejudiced because, absent these due process violations, he plausibly might have kept or been granted TPS relief again. Furthermore, Mr. Bonilla exhausted his administrative remedies before the BIA. And when he petitioned to the Ninth Circuit, he was deprived of any opportunity for judicial review because of an erroneous interpretation of law.

Because Mr. Bonilla's due process rights were violated, the resulting removal order is void. Accordingly, the government cannot prove an essential element of the unlawful reentry charges—namely, a valid prior order of removal. Therefore, under 8 U.S.C. § 1326(d), the indictment must be dismissed.

### II. STATEMENT OF FACTS[1]

In April 2011, the United States Citizenship and Immigration Services ("USCIS") informed Mr. Bonilla about their intent to deny his Temporary Protected

---

[1] The following statement of facts is derived from discovery produced by the government.

1

Status ("TPS") if he were to re-register for the same status. (Exh. A). On May 6, 2011, Mr. Bonilla's Employment Authorization application was approved. (Exh. B). On August 10, 2012, Mr. Bonilla's TPS was withdrawn. (Exh. C) USCIS alleged that Mr. Bonilla was convicted of a crime that was classified as an aggravated felony per INA 101(a)(43)(A). (Exh. C). DHS then issued a charging document and placed Mr. Bonilla in removal proceedings. (Exhs. D, O).

While in the midst of removal proceedings, Mr. Bonilla was granted TPS again. (Exh. E). USCIS re-instated Mr. Bonilla's TPS on January 8, 2014. (Exh. E).  However, despite no new convictions, Mr. Bonilla's TPS was withdrawn/denied again on September 28, 2015. (Exh. F). The reasons for this denial remain mostly unclear, aside from the words "mirror denial" being handwritten on one of the documents that were provided to the Immigration Court. (*See* Exh. G; Exh. F).

The removal proceedings took place over more than four years—beginning in June 2013 and going until September 2017. (Exh. H). The IJ took the matter under submission after the last hearing on September 13, 2017. Mr. Bonilla was ordered deported by the IJ on January 9, 2018. (Exh. I). In the order, the IJ relies, in part, on statements coming from an exhibit that was admitted during the removal proceedings, referred to as Exhibit 2C. (Exh. J). Ultimately, the IJ concluded that Mr. Bonilla was ineligible for all forms of relief from removal. (Exh. I).

Mr. Bonilla sought review of the IJ's order to the Board of Immigration Appeals ("BIA"). (Exh. K). On July 10, 2019, the BIA issued its order after reviewing the IJ's "findings of fact, including findings as to the credibility of testimony, and the likelihood of future events." (Exh. K at 1.) The BIA affirmed the IJ's decision denying Mr. Bonilla relief. (Exh. K).

On August 7, 2019, Mr. Bonilla then sought review of the BIA's order to the Ninth Circuit by sending his petition via certified mail. (Exh. L). The petition was intended to arrive on August 8, 2019, but arrived on August 9, 2019. (Exh. L). For

2

1    unknown reasons, the petition was not entered into the docket until the following

2    Monday, August 12, 2019. (Exh. M at 3.) The Ninth Circuit rejected the appeal, citing

3    8 U.S.C. 1252(b)(1), the 30-day deadline to file a petition for review. (Exh. M at 5.)

4            After the Ninth Circuit's denial of review (issued on November 20, 2019), Mr.

5    Bonilla requested the BIA to reissue its order so that Mr. Bonilla could re-petition the

6    Ninth Circuit. (*See* Exh. N; Exh M). On October 7, 2020, the BIA denied Mr. Bonilla's

7    request to reissue it's July 10, 2019 order.

8            On March 5, 2025, the government filed the instant complaint, alleging that Mr.

9    Bonilla had unlawfully returned to the United States after his 2021 deportation. (Dkt.

10   1).

11                                 **III. ARGUMENT**

12       **A. Legal Framework**

13           A defendant charged under 8 U.S.C. § 1326 may collaterally attack the validity

14   of the underlying deportation order by showing: (1) exhaustion of available

15   administrative remedies; (2) deprivation of the opportunity for judicial review; and (3)

16   fundamental unfairness in the entry of the order. 8 U.S.C. § 1326(d)(1)-(3). Due

17   process provides defendants the right to challenge a prior removal order. *United States*

18   *v. Mendoza-Lopez*, 481 U.S. 828, 837–39 (1987).

19           The final requirement—fundamental unfairness—is satisfied if a defendant

20   shows: (1) a defect in the removal proceeding violated due process, and (2) he suffered

21   prejudice as a result. *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1203–04 (9th Cir.

22   2004). Mr. Bonilla begins by establishing fundamental unfairness under 8 U.S.C.

23   § 1326(d)(3) before turning to (d)(1) and (d)(2).

24

25

26

27

28

1

**B. Multiple Defects in Mr. Bonilla's Immigration Proceedings Violated**

2

**Due Process and Resulted in Fundamental, Prejudicial Unfairness**

3

**under 8 U.S.C. § 1326(d)(3)**

4

**a. USCIS violated Mr. Bonilla's due process rights by behaving**

5

**with deliberate indifference in wrongfully withdrawing his TPS**

6

In immigration contexts, a petitioner can establish a due process violation by

7

showing that USCIS was "deliberately indifferent." *Dent v. Sessions*, 900 F.3d 1075,

8

1083 (9th Cir. 2018) (quoting *Brown v. Holder*, 763 F.3d 1141, 1150 (9th Cir. 2014)

9

("*Brown I*"). After establishing deliberate indifference, the petitioner must then show

10

prejudice, "which means that the outcome of the proceeding *may have been affected* by

11

the alleged violation." *Id.* (emphasis in original) (quoting *Zolutukhin v. Gonzalez*, 417

12

F.3d 1073, 1076 (9th Cir. 2005)). To establish deliberate indifference, the petitioner

13

must show:

14

> (1) a showing of an objectively substantial risk of harm; and (2) a showing

15

> that the officials were subjectively aware of facts from which an inference

16

> could be drawn that a substantial risk of serious harm existed and (a) the

17

> official actually drew that inference or (b) that a reasonable official would

18

> have been compelled to draw that inference.

19

*Brown v. Lynch*, 831 F.3d 1146, 1150 (9th Cir. 2016) (*"Brown II"*) (internal quotation

20

marks and citations omitted).[2]

21

Turning to the facts here, USCIS acted with deliberate indifference by wrongfully

22

withdrawing Mr. Bonilla's TPS. In August 2012, USCIS informed Mr. Bonilla that it

23

was withdrawing his TPS status because he had been convicted of an aggravated felony.

24

(Exh. C). However, the Ninth Circuit had held that Mr. Bonilla's statute of conviction

25

26

---

27

    [2] A petitioner may also prevail on a deliberate indifference theory if the

petitioner can show that USCIS "arbitrarily and intentionally obstructed his

28

application." *Brown II*, 831 F.3d at 1150.

was *not* an aggravated felony since as early as 2004. *United States v. Pallares-Galen*, 359 F.3d 1088, 1101-03 (9th Cir. 2004). Because of this error, DHS served Mr. Bonilla with a charging document, placing him in removal proceedings that led to his deportation. (Exh. O). For the reasons stated below, this constitutes deliberate indifference.

### b. USCIS behaved with deliberate indifference

#### (1)    *Objectively substantial risk of harm*

To start, withdrawing a TPS application creates "an objectively substantial risk of harm." *Brown II*, 831 F.3d at 1150. If someone's TPS status is withdrawn, they lose significant legal protections. *See* 8 CFR § 244.14 (regulations regarding the withdrawal of TPS). These include the loss of protection from deportation and the loss of work authorization. 8 USC § 1254a(a)(1)(A), (B).  A TPS withdrawal also "may subject the applicant to exclusion or deportation proceedings," which is precisely what happened to Mr. Bonilla. 8 CFR § 244.14(b)(2). In evaluating deliberate indifference claims in immigration contexts, courts consider the deprivation of status and the risk of removal proceedings as an objectively substantial risk of harm. *See Brown II*, 831 F.3d at 1151 (analyzing a deliberate indifference claim premised on losing a chance at immigration status, but rejecting the claim on factual grounds).

#### (2)    *Awareness of facts from which an inference of substantial risk of harm could be drawn*

Turning to the second prong, USCIS was "subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed." *Id.* at 1150. In its TPS withdrawal letter, TPS acknowledges the substantial risk of serious harm that Mr. Bonilla was facing. (Exh. C). The letter cites to 8 CFR § 244.14, the provision that acknowledges that the withdrawal of TPS status may lead to removal hearings. 8 CFR § 244.14(b)(2). USCIS was thus subjectively aware of the harm that could come to Mr. Bonilla due to losing TPS.

For the next prong, Mr. Bonilla must show either that USCIS "actually drew that inference" that his TPS could be wrongfully withdrawn, or "that a reasonable official would have been compelled to draw that inference." *Brown II*, 831 F.3d at 1150. Although he only need establish one, Mr. Bonilla can establish both prongs in this case.

### (3)    *Reasonable official would have been compelled to draw inference*

To start, a reasonable USCIS official would have drawn the inference that Mr. Bonilla's TPS was wrongfully withdrawn. USCIS's governing regulations provide that it may withdraw TPS in three situations: **(1)** the applicant "was not in fact eligible at the time such status was granted, or at any time thereafter becomes ineligible for such status;" **(2)** the applicant had "not remained continuously physically present in the United States from the date the alien was first granted Temporary Protected Status under this part;" or **(3)** the applicant "fails without good cause to register with DHS annually within thirty (30) days before the end of each 12–month period after the granting of Temporary Protected Status." 8 CFR § 244.14(a)(1)-(3). USCIS quotes this provision at length in its TPS withdrawal letter, reinforcing that USCIS was aware of this regulation. (Exh. C).

USCIS gave only one reason for withdrawing Mr. Bonilla's TPS: he had "become ineligible for [TPS] status" because his misdemeanor conviction under California Penal Code § 647.6(a) allegedly constituted an aggravated felony. (Exh. C). Any reasonable USCIS official should have known, however, that CPC § 647.6(a) (Annoying or Molesting a Child) was not an aggravated felony. Going back to 2004—eight years prior to the withdrawal of Mr. Bonilla's TPS—the Ninth Circuit had stated on multiple occasions that CPC § 647.6(a) was not an aggravated felony. *United States v. Pallares-Galen*, 359 F.3d 1088, 1101-03 (9th Cir. 2004); *United States v. Baza-Martinez*, 464 F.3d 1010, 1015 (9th Cir. 2006); *Nicanor-Romero v. Mukasey*, 523 F.3d 992, 996-997 (9th Cir. 2008). The Ninth Circuit has continued to hold the same line on section 647.6(a) even after Mr. Bonilla's TPS was withdrawn. *See United States v. Vidal-Mendoza*, 705

6

F.3d 1012, 1017 (9th Cir. 2013) (relying on *Pallares-Galen*'s holding that section 647.6(a) is not an aggravated felony).

Given this line of authority, a reasonable USCIS official "would have been compelled to draw [the] inference" that Mr. Bonilla had not been convicted of an aggravated felony.

### (4)    *USCIS actually drew the inference*

Although Mr. Bonilla has already met the *Brown II* test for deliberate indifference, he can also establish the alternative prong: that a USCIS official "actually drew" the inference that his TPS was wrongfully withdrawn. As stated above, Mr. Bonilla was actually approved for TPS after he received the August 2012 withdrawal letter. (Exh. E). His approval notice was dated 16 months after his notice of withdrawal, renewing his TPS status as of January 8, 2014. (Exh. E).

By issuing this approval after wrongfully withdrawing Mr. Bonilla's TPS, USCIS implicitly acknowledged that it had made a mistake. The law clearly prohibits granting TPS to those who have been convicted of aggravated felonies. In 8 U.S.C. § 1254a(c)(2)(B)(ii), it states that an applicant "shall not be eligible for temporary protected status" if the applicant "is described in section 1158(b)(2)(A)." The referenced section includes applicants who have "been convicted by a final judgement of a particularly serious crime." 8 USC § 1158(b)(2)(A)(ii). For the purposes of TPS, an applicant "who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime." 8 USC § 1158(b)(2)(B)(i). Thus, if a USCIS official believed Mr. Bonilla had committed an aggravated felony, that official would be barred from granting him TPS. The fact that USCIS later granted Mr. Bonilla's TPS application demonstrates that USCIS was aware of its prior mistake.

In light of all this, the fact that USCIS granted Mr. Bonilla's TPS status in 2014 demonstrates that USCIS actually did draw the inference that Mr. Bonilla was not an aggravated felon and should thus have remained in TPS status. TPS could only have

approved Mr. Bonilla in 2014 if it recognized that he was *not* in fact an aggravated felon. Because an official actually drew the inference that USCIS had wrongfully withdrawn Mr. Bonilla's TPS, Mr. Bonilla has established deliberate indifference.

### c. Mr. Bonilla suffered prejudice due to USCIS's deliberate indifference in wrongfully withdrawing his TPS application

USCIS's deliberate indifference regarding Mr. Bonilla's TPS application caused him prejudice. A noncitizen suffers prejudice if the "the outcome of the proceeding *may have been affected* by the alleged violation." *Dent*, 900 F.3d at 1083 (emphasis in original) (quoting *Zolutukhin v. Gonzalez*, 417 F.3d 1073, 1076 (9th Cir. 2005)). Here, USCIS's wrongful withdrawal of TPS prejudiced Mr. Bonilla in several ways. Perhaps most importantly, Mr. Bonilla's TPS would not have been withdrawn without this error, meaning he would have continued to enjoy the protections of TPS. He would have continued to maintain his work authorization, allowing him to remain gainfully employed. 8 USC § 1254a(a)(1)(B) (providing work authorization for those granted TPS). Finally, he would have been protected from deportation, rather than placed in removal proceedings. 8 USC § 1254a(a)(1)(a) (the United States "shall not remove the [TPS holder] from the United States during the period in which such status is in effect").

To be clear, the fact that USCIS later recognized its error and approved Mr. Bonilla's 2014 TPS application does not impact this inquiry. Unfortunately, this approval was too little too late. The governing TPS regulations provide that once someone is placed in removal proceedings, USCIS loses the ability to adjudicate Mr. Bonilla's TPS applications. 8 CFR § 244.18(b) ("The filing of the charging document by DHS with the Immigration Court renders inapplicable any other administrative, adjudication or review of eligibility for Temporary Protected Status."). It is likely for this reason that soon after issuing Mr. Bonilla's 2014 approval, USCIS denied his request for work authorization and then again withdrew his TPS. (Exh. F; Exh. G). None of this would have happened

if USCIS had not wrongfully withdrawn TPS in the first place. The USCIS's initial mistake continued to prejudice him.

### d. The Immigration Court violated Mr. Bonilla's due process rights by improperly denying Mr. Bonilla his right to cross-examine witnesses

Mr. Bonilla has the right to a full and fair hearing before the Immigration Court "which, at a minimum, includes a reasonable opportunity to present and rebut evidence and to cross-examine witnesses" *Grigoryan v. Barr*, 959 F.3d 1233, 1240 (9th Cir. 2020); see also *Ching v. Mayorkas*, 725 F.3d 1149, 1158-59 (9th Cir. 2013). While the admission of evidence in immigration proceedings is not subject to the Federal Rules of Evidence, evidence is still required to have probative value and its use must be considered "fundamentally fair." *Cinapian v. Holder*, 567 F.3d 1067, 1074 (9th Cir. 2009). Evidence is considered fundamentally fair when the evidence is probative and respondents are not deprived due process of law. *Id*. (citing *Martin-Mendoza v. INS*, 499 F.2d 918, 921 (9th Cir. 1974); see also *In Re Toro*, 17 I. & N. Dec. 340, 343 (B.I.A. 1980)). Because Mr. Bonilla was deprived of due process when he was denied the right to cross-examine witnesses who made statements that were used against him, Mr. Bonilla's underlying immigration proceedings were fundamentally unfair.[3]

"Congress has specifically provided that [a respondent] in removal proceedings must be given 'a reasonable opportunity . . . to cross-examine witnesses presented by the Government," [and the court has] held that the government deprives the [respondent] of a fundamentally fair hearing when it fails 'to make a good faith effort to afford the [respondent] a reasonable opportunity to confront and cross-examine the witness against him." *Alcaraz-Enriquez v. Garland*, 19 F.4th 1224, 1231 (9th Cir. 2021)

---

[3] It is clear from the IJ's order (Exh. G) that the IJ is relying on the statements made in the reports contained within the IJ Court Exhibit 2C. The IJ Court Exhibit 2C is attached to this filing as Exhibit H. No sworn testimony was presented by any of the witnesses who made statements in Exhibit 2C during the removal proceedings.

(quoting 8 U.S.C. § 1229a(b)(4)(B) and *Saidane v. INS*, 129 F.3d 1063, 1066 (9th Cir. 1997) (holding that because the BIA failed to make a good-faith effort to let Alcaraz confront the witnesses against him, the BIA's reliance on the probation officer's report was error, and further holding that the error was prejudicial).

The Ninth Circuit assesses the reliability of evidence and fundamental fairness in *Alcaraz-Enriquez*. 19 F.4th 1224, 1231 (9th Cir. 2021). In that case, the respondent was charged with being inadmissible based on a criminal conviction. The IJ considered testimony from the respondent and the probation report produced in connection to his convictions. *Alcaraz-Enriquez*, 19 F.4th at 1229. The probation report included statements made by the complaining witness. *Id*. This same report did not include any statements from the respondent. *Id*. In the IJ's decision to deny the respondent relief, the IJ found the probation report to be more credible over the respondent's testimony—ultimately determining that the respondent was convicted of a "particularly serious crime" and was thereby "ineligible for withholding of removal." *Id*. Because the respondent did not have the opportunity to conduct cross-examination of the declarant's statements that were introduced into evidence through the probation report, the Ninth Circuit found that the probation report lacked reliability—rendering the BIA's decision support the IJ's findings as fundamentally unfair. *Id*. at 1231.

DHS[4] is tasked with making reasonable efforts to afford a respondent a reasonable opportunity to confront the witnesses against him or her. *Saidane v. INS*, 129 F.3d 1063, 1065 (9th Cir. 1997) (citing *Cunanan v. INS*, 856 F.2d 1373, 1375 (9th Cir. 1988.)) In *Saidane*, INS presented the IJ with an affidavit from a witness that the government chose not to call. The Ninth Circuit took issue with the fact that INS did not make a good faith effort "to afford the [respondent] a reasonable opportunity to confront and cross-examine the witness against him." *Id*. at 1066. As a result, the Ninth

---

[4] Formally referred to as the Immigration and Naturalization Service, INS, prior to 2003.

Circuit found that the admissibility of a hearsay affidavit, without the opportunity to cross-examine the witness, deprived the respondent of a fundamentally fair hearing. (*Id.*)

Similar to DHS' obligations in *Alcaraz-Enriquez* and *Saidane*, DHS in Mr. Bonilla's immigration proceedings had an obligation to make efforts to procure the witnesses who made the statements in the police report and probation report, and make them available for cross-examination. In the underlying proceedings, DHS presented what was marked as Exhibit 2C into evidence to be considered by the IJ in making a discretionary determination as to Mr. Bonilla's eligibility for relief. (Exh. J). Exhibit 2C spanned across approximately fifty pages and contained the minute order from Mr. Bonilla's 2010 conviction, criminal complaint, incident report, plea transcript, sentencing memorandum, probation officer's report, and a Static 99 Assessment report. (Exh. J). Within this exhibit, there were four individuals who made statements, conclusions, or language interpretations other than Mr. Bonilla. Namely, statements were made by: (1) the complaining witness (in the underlying criminal conviction), J.R., (2) the complaining witness' mother, Maria Torres, (3) the probation officer, Michael Daniels, and (4) Detective Miguel Torres, who translated Mr. Bonilla's statements from Spanish to English. (Exh. J). Despite having six hearings over the course of more than four years, not one of these four witnesses were presented at the removal proceedings. (Exh. H). Moreover, there's no evidence in the record to suggest that DHS made any efforts to make any one of these individuals available for cross-examination.

The admission of hearsay documents without the presentation of witnesses for cross-examination deprived Mr. Bonilla of a fundamentally fair hearing. Probation Officer Daniels' statements go beyond merely a recitation of facts otherwise located in reports or documents that are maintained in the traditional course of business. PO Daniels' report includes conclusions he made which relied, in part, on statements provided by Maria Torres. PO Daniels also made blanket findings not supported in fact

11

or evidence, such as to assert that Mr. Bonilla had been going "under the radar" for an unspecified amount of time. (Exh. J at 45). PO Daniels made these findings absent an interview with Mr. Bonilla. *Id*. The incident report was also admitted into evidence and the statements J.R. told officers were considered by the IJ. (Exh. J at 17-22; Exh. I at 8-10). The IJ specifically cites to the statements of J.R. from the incident report, the statements of the Maria Torres in the probation report, and the probation officer's conclusions as to why the IJ disbelieves Mr. Bonilla's removal proceedings testimony. (Exh. I at 8-10).

Moreover, the incident report was written in English. Mr. Bonilla, a person who communicates best in the Spanish language, provided law enforcement with his statement in Spanish. (*See* Exh. J at 21). Mr. Bonilla's statement to detectives when compared to Mr. Bonilla's removal proceedings testimony was highly scrutinized by the IJ. (Exh. I at 8-10). The detective who authored the incident report, Detective Susan Velazquez, wrote the incident report in English. Detective Velazquez relied on the translations of another officer, Detective Miguel Torres. This is particularly problematic as it adds an additional witness who made a statement or interpretation of a statement that was used against Mr. Bonilla. (*See* Exh. I at 21). Moreover, it remains unknown whether Detective Torres is certified to accurately translate what could potentially incriminating statements made by individuals between the Spanish and English languages. The admission of the statements of these individuals without the opportunity for cross-examination deprived Mr. Bonilla of a fundamentally fair hearing.

The Ninth Circuit held that the BIA was in error for failing to allow the respondent to confront the witnesses against him because of the BIA's reliance on the probation report. *Alcaraz-Enriquez*, 19 F.4th 1224 (9th Cir. 2021). Moreover, the error was considered prejudicial because the IJ relied on aggravating facts that came from the probation report when concluding that the respondent's criminal conviction was considered a "particularly serious" crime, rendering the respondent ineligible for relief.

1  The court reasoned that had there been an opportunity for the respondent to cross-
2  examine these witnesses, then the probation report might have been considered
3  unreliable and ultimately find the respondent eligible for relief. *Id.* at 1232.

4      Denying Mr. Bonilla the opportunity to cross-examine J.R., Maria Torres, PO
5  Daniels, Detective Velazquez, and Detective Torres impugns the reliability of the
6  underlying reports. See *Alcaraz-Enriquez*, 19 F.4th at 1231. DHS failed to act in good
7  faith when it failed to present any *one* of these witnesses over the course of four years.
8  See *Alcaraz-Enriquez*, 19 F.4th 1224, 1231 (9th Cir. 2021); *Saidane*, 129 F.3d 1063,
9  1066 (9th Cir. 1997). The immigration proceedings happened in the same state and the
10  same county as the underlying criminal offense. (*See* Exh. H; Exh. J). There is no
11  reason provided as to why DHS would shirk such obligations. The admission of these
12  statements made by various out-of-court declarants were at the crux of the IJ's findings
13  which ultimately led to the IJ's decision to deny Mr. Bonilla relief. (*See* Exh. I). But for
14  the IJ's reliance on aggravating facts that came from the incident report and probation
15  report, the court might have considered the reports unreliable and ultimately found Mr.
16  Bonilla eligible for relief. See *Alcaraz-Enriquez*, 19 F.4th at 1232. Thus, Mr. Bonilla's
17  removal was fundamentally unfair under § 1326(d).

18      **e. Absent these Due Process violation, Mr. Bonilla might have**
19      **plausibly been granted Temporary Protected Status**

20      Mr. Bonilla does not seek to minimize his 2010 conviction. However, in the
21  context of discretionary relief, TPS was a plausible form of legal status given his
22  numerous favorable factors. At the time of his removal order, Mr. Bonilla had spent
23  approximately 18 years of his life in the United States. (Exh. I at 6). Mr. Bonilla owned
24  a home in the United States, a home he co-signed on a loan with his sister. (Exh. I at 6).
25  Mr. Bonilla was gainfully employed and paid his taxes in the United States. (Exh. I at
26  6). Lastly, this conviction occurred approximately 8 years prior to the removal order. He

27
28

13

spent the years following his first and only criminal conviction living a law-abiding
life—further weighing in favor of relief. (Exh. I at 6).

But for USCIS improperly withdrawing Mr. Bonilla's TPS and the IJ's reliance
on the statements of multiple witnesses who were not presented for cross-examination,
Mr. Bonilla might have plausibly been granted TPS as a form of relief from removal.

## C. Mr. Bonilla Satisfies the Requirements of Exhaustion Under Section 1326(d)(1)

Here, Mr. Bonilla satisfies the administrative exhaustion requirement in section
1326(d)(1). A noncitizen exhausts administrative remedies by "appealing the
immigration judge's decision to the BIA." *United States v. Palomar-Santiago*, 593 U.S.
321, 327 (2021); *see also United States v. Portillo-Gonzalez*, 80 F.4th 910, 920 (9th
Cir. 2023) (stating that "an administrative appeal to the BIA" would have satisfied
section 1326(d)(1)). Mr. Bonilla appealed the IJ's decision to the BIA, thus satisfying
the exhaustion requirement. (Exh. K).

## D. Mr. Bonilla was Deprived of Judicial Review Under Section 1326(d)(2)

Finally, Mr. Bonilla also satisfies the judicial review requirement in section
1326(d)(2), since he was "improperly deprived … the opportunity for judicial review."
8 USC § 1326(d)(2). After exhausting his administrative remedies, Mr. Bonilla, at this
time proceeding *pro se*, mailed a Petition for Review to the Ninth Circuit. As stated in
the BIA order denying Mr. Bonilla's motion to reopen proceedings, Mr. Bonilla mailed
this petition by USPS Priority Mail Express on August 7, 2019, to ensure that it arrived
by his deadline on August 9, 2019. (Exh. L at 1). However, "for unknown reasons," the
Ninth Circuit did not file his petition until August 12, 2019.[5] (Exh. N at 2; *see also* Exh.
M at 3). Because August 9, 2019 was a Friday, Mr. Bonilla's petition was received the
following Monday, rendering it exactly one day late. Relying on *Magtanong v.*

---

[5] According to USPS's tracking information, it appears that Mr. Bonilla's
petition in fact arrived at the courthouse on August 9. (Exh. L).

*Gonzales*, 494 F.3d 1190 (9th Cir. 2007), the Ninth Circuit panel found that it lacked jurisdiction to review a late petition and thus could not "create any exceptions to the 30-day deadline." (Exh. M at 6). Accordingly, the panel dismissed the petition for lack of jurisdiction. (Exh. M at 6).

The panel's decision to dismiss the petition for lack of jurisdiction deprived Mr. Bonilla of the opportunity for judicial review, because it was based on an incorrect interpretation of the 30-day deadline. In *Alonso-Juarez v. Garland*, the Ninth Circuit held that "the thirty-day deadlines set forth in 8 USC § 1252(b)(1) is a non-jurisdictional rule." 80 F.4th 1039, 1043 (9th Cir. 2023). In doing so, it overturned *Magtanong*—the decision holding that the 30-day rule was jurisdictional—because it was irreconcilable with prevailing Supreme Court precedent. *Alonzo-Juarez*, 80 F.4th at 1046-1047. This distinction is crucial, because jurisdictional rules carry "harsh consequences," such that courts "cannot grant equitable exceptions to jurisdictional rules and must strictly enforce them *sua sponte* at any time in the litigation." *Id.* at 1047 (internal quotation marks omitted) (quoting *Santos-Zacaria v. Garland*, 598 U.S. 411, 416 (2023).

Thus, although Mr. Bonilla diligently exhausted his remedies, sought review before the Ninth Circuit, and took affirmative steps to ensure his petition arrived on time, the Ninth Circuit relied on an erroneous decision to dismiss his petition without any consideration of equitable remedies. This improperly denied Mr. Bonilla of the opportunity for judicial review.

///

///

///

///

///

///

15

## IV. CONCLUSION

For the forgoing reasons, Mr. Bonilla respectfully requests this Court to dismiss the indictment with prejudice.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  May 14, 2025          By  /s/ Kyra Nickell
                                  KYRA NICKELL
                                  JAKE CRAMMER
                                  Deputy Federal Public Defender
                                  Attorneys for JOSE ANTONIO BONILLA

16