CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
KYRA NICKELL (Bar No. 328816)
(E-Mail: Kyra_Nickell@fd.org)
JAKE CRAMMER (Bar No. 329928)
(E-Mail: Jake_Crammer@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
JOSE ANTONIO BONILLA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>JOSE ANTONIO BONILLA,<br><br>　　　　　Defendant. | Case No. 2:25-CR-259-WLH<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS INDICTMENT UNDER 8 U.S.C. § 1326(d)**<br><br>Date: May 28, 2025<br>Time: 10:30 a.m. |

Defendant Jose Antonio Bonilla, by and through his attorneys of record, Deputy Federal Public Defenders Kyra Nickell and Jake Crammer, hereby submits this Reply in support of his Motion to Dismiss the Indictment.

　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　CUAUHTEMOC ORTEGA
　　　　　　　　　　　　　　　　　　Federal Public Defender

DATED: May 26, 2025　　　　　　　By　*/s/ Kyra Nickell*
　　　　　　　　　　　　　　　　　　KYRA NICKELL
　　　　　　　　　　　　　　　　　　JAKE CRAMMER
　　　　　　　　　　　　　　　　　　Deputy Federal Public Defender
　　　　　　　　　　　　　　　　　　Attorneys for JOSE ANTONIO BONILLA

## I. INTRODUCTION

The government takes several strikes at Mr. Bonilla's motion to dismiss under 8 U.S.C. § 1326(d), but none of them land. The government would improperly constrain the reach of section 1326(d) to deportation proceedings only. But the government's position does not comply with the origin of 1326(d), the due process rights of defendants, or Ninth Circuit authority. It next argues that Mr. Bonilla suffered no due process violations, despite the fact that USCIS wrongfully terminated his TPS with deliberate indifference and that the IJ deprived him of the right to cross-examine witnesses whose statements were used against him. Finally, the government would blame Mr. Bonilla for the dismissal of his petition of review, even though the dismissal relied on an erroneous interpretation of the statutory deadline.

Because Mr. Bonilla's 1326(d) challenge still stands, the Court should dismiss the Indictment.

## II. ARGUMENT

**A.    Mr. Bonilla may collaterally attack USCIS's decision to withdraw his TPS Status.**

The government would limit collateral attacks under section 1326(d) to removal orders only, placing administrative decisions such as the withdrawal of TPS beyond their reach. The Court should reject the government's overly restrictive reading of 1326(d), instead holding that the Court has the power to consider collateral attacks to TPS determinations.

In *United States v. Mendoza-Lopez*, the Supreme Court reviewed an earlier version of 8 U.S.C. § 1326 that did not contain a provision allowing for a collateral attack on the accused's underlying immigration proceedings. 481 U.S. 828 (1987). The Supreme Court held that the earlier version of section 1326 did "not comport with the constitutional requirement of due process," since it "imposes a criminal penalty for reentry after any deportation, regardless of how violative of the rights of the

1

[noncitizen] the deportation proceeding may have been." *Id.* at 837. With the passage of AEDPA in 1996, Congress amended section 1326 by adding subsection (d), permitting the accused to collaterally attack the underlying immigration proceedings. *See United States v. Palomar-Santiago*, 593 U.S. 321, 324-325 (2021); *see also* 8 U.S.C. § 1326(d).

Looking closer to the underlying rationale of *Mendoza-Lopez*, it makes sense to permit noncitizens to attack administrative decisions regarding TPS under section 1326(d). In reaching its conclusion, the *Mendoza-Lopez* Court relied on three cases, none of which concerned deportation proceedings specifically: *Estep v. United States*, 327 U.S. 114 (1946) (collateral attack to draft regulations); *Yakus v. United States*, 321 U.S. 414 (1944) (challenge to wartime price control regulations); *McKart v. United States*, 395 U.S. 185, (collateral attack on draft regulations). In all three of these cases, the defendants sought to challenge administrative regulations that were insulated from judicial review. *Estep*, 321 U.S. at 427-431; *Yakus*, 321 U.S. at 427-431; *McKart*, 199 U.S. at 196-197. Thus, under *Mendoza-Lopez*'s rationale, collateral attacks should not be cabined to deportation proceedings only, but should extend to administrative decisions like TPS, regardless of whether they are deemed discretionary.

Furthermore, the Ninth Circuit has recognized due process challenges to aspects of the immigration process beyond deportation orders. In *Dent v. Sessions*, 900 F.3d 1075, the Ninth Circuit allowed for due process challenges to USCIS's handling of a person's citizenship application. *Id* at 1083. *See also Brown v. Holder*, 763 F.3d 1141 (9th Cir. 2014) (*"Brown I"*), *Brown v. Lynch*, 831 F.3d 1146, 1150 (9th Cir. 2016) (*"Brown II"*). Thus, a noncitizen's due process rights can be violated not only by unlawful removal orders, but also by the deliberate indifference of administration officials handling a person's application for immigration status, like TPS.

**B.     Mr. Bonilla's Deportation Order was Fundamentally Unfair.**

        **a. USCIS violated Mr. Bonilla's due process rights by behaving with deliberate indifference toward his TPS application**

The government contends that the Court cannot review TPS, because "TPS is discretionary relief that is ultimately vested with the Attorney General." (Dkt. 50 at 6). But the government confuses the Court's constitutional powers to hear 1326(d) challenges with its authority to review a petition for review from a BIA decision. Indeed, none of the cases it cites for this proposition pertain to 1326(d) challenges.[1] However, in *Mendoza-Lopez*, the Supreme Court relied on cases in which the Court had found a right to challenge administrative proceedings that act as predicates for criminal prosecutions, even where those proceedings were executive, discretionary, and insulated from judicial review. *See, e.g., Estep*, 327 U.S. at 116-119.

Furthermore, Mr. Bonilla had a right under federal law not to have his TPS terminated unlawfully. Immigration regulations permit USCIS to withdraw TPS in only three situations: ineligibility, lack of physical presence, or failure to register with DHS. 8 CFR § 244.14(a); *see also Russell v. Landrieu*, 621 F.2d 1037, 1040 (9th Cir. 1980) (an "interest in a benefit protected by the due process clause results from a legitimate claim of entitlement created and defined by an independent source, such as state or federal law"). USCIS withdrew Mr. Bonilla's TPS status even though he met none of these three categories. Thus, his claim is properly analyzed under the deliberate indifferent standard articulated in *Brown I*, *Brown II*, and *Dent.*

---

[1] *See* Dkt. 50 at 6-7, *citing Mejia-Rodriguez v. U.S. Dept. of Homeland Sec.*, 562 F.3d 1137, 1139 (11th Cir. 2009) (hearing a petition for review); *Munoz v. Ashcroft*, 339 F.3d 950, 952 (9th Cir. 2003) (same); *Tovar-Landin v. Ashcroft*, 361 F.3d 1164, 1165 (9th Cir. 2004) (same).

          a.      **Even under the modified categorical approach, Mr. Bonilla's conviction is not an aggravated felony**

The government is correct that courts have applied the modified categorical approach to determine whether Mr. Bonilla's crime of conviction, Cal. Penal Code § 647.6(a)(1), is an aggravated felony, but the government misapplies that approach here. The government's errors stem, primarily, from a misunderstanding of how police reports are considered under the modified categorical approach.

In *United States v. Almazan-Becerra*, the Ninth Circuit held that it was proper to consider police reports where the accused "stipulate[s] during the plea colloquy that the police reports contained a factual basis for [the accused's] guilty plea[]." 537 F.3d 1094, 1097 (9th Cir. 2008). But courts are not to take every statement contained within police reports as gospel truth. Recognizing that court documents sometimes contain contradictory facts, the *Almazan-Becerra* panel held that "when a defendant stipulates that 'a factual basis' for his plea is present in 'court documents,' courts may use any *uncontradicted facts* in those documents to establish an element of a prior conviction." *Id.* at 1099 (emphasis added) (quoting *United States v. Castillo-Morales*, 507 F.3d 873, 876 (5th Cir. 2007)).

In its argument, the government relies on a single statement from the underlying police report—a statement that is contradicted within that same police report. The government keys into a statement from the victim, alleging that Mr. Bonilla "reached over [and] forcibl[y] grabbed his penis over his pants and squeezed." (Def. Exh. J at USAO_1309; *see also* Dkt. 50 at 9-10). The same victim also alleges that Mr. Bonilla made inappropriate comments to him about his sexuality and asked if he could see his penis. (Def. Exh. J at USAO_1309). Turning to the following page, however, the same police report contains statements made by Mr. Bonilla. At places, the stories overlap: Mr. Bonilla admits to talking about his sexuality and asking if he could see the boy's

penis. (Def. Exh. J at USAO_1310-1311). But when asked whether he touched the boy's penis, Mr. Bonilla adamantly denies this fact at least three times. (*Id.*).

Applied correctly, then, the modified categorical approach leads to the same conclusion as the categorical approach: Mr. Bonilla did not commit an aggravated felony. To the extent the Court considers the police report as part of its inquiry, it must only adopt "any uncontradicted facts in those documents to establish an element of a prior conviction." *Almazan-Becerra*, 537 F.3d at 1099. Because the statement regarding Mr. Bonilla touching the victim's penis is contradicted within the same report, the Court may not rely on that fact. However, the Court may rely on the uncontradicted facts: Mr. Bonilla's inappropriate sexual comments.

Thus, under the modified categorical approach, Mr. Bonilla's conviction does not constitute an aggravated felony.[2] As the Ninth Circuit has held, the precise reason that section 647.6(a)(1) is not a categorical match to the aggravated felony statute is because it may be premised on inappropriate speech, such as propositioning a minor for sex, that does not constitute sexual abuse of a minor for aggravated felony purposes. *See Pallares-Galan*, 359 F.3d at 1101. Relying on the "uncontradicted facts" in Mr. Bonilla's police report, then, it is clear that the stipulated factual basis for Mr. Bonilla's offense was premised on just that: inappropriate sexual comments to a minor, rather than forcible touching.

For the same reasons stated in the instant Motion to Dismiss, Mr. Bonilla maintains that USCIS's deliberate indifference with regard to his TPS application caused him prejudice. (Dkt. 40 at 8-9).

---

[2] As stated in Mr. Bonilla's motion to dismiss, this argument is strengthened by the fact that USCIS later approved his TPS application after wrongfully withdrawing it, suggesting they recognized that he was not, in fact, an aggravated felon. (*See* Def. Exh. E).

5

**b. The IJ violated Mr. Bonilla's due process rights by improperly considering hearsay statements beyond impeachment evidence**

The IJ admitted hearsay statements without the testimony, and cross-examination, of declarants who made them. While at one point, the IJ stated on the record that the statements would be considered for impeachment purposes, the IJ's order makes it clear that the declarants' statements were specifically considered. The defense does not contest whether impeachment evidence is admissible in Immigration Court proceedings. However, the IJ erred here in considering the statements in the incident report and probation report as evidence of impeachment, absent the presentation of witnesses for cross-examination.

In its opposition, the government asserts that Mr. Bonilla's statements in the incident report were used as impeachment evidence only. (Dkt. 50 at 12). However, it is abundantly clear that the IJ considered more than just Mr. Bonilla's statements to police in his final order. The IJ cites to statements from: (1) the complaining witness, (2) Maria Torres, (3) Probation Officer Daniels, and (4) Detective Miguel Torres, who translated Mr. Bonilla's statements. (Def. Exh. J). The IJ even goes so far as to specifically quote statements from Maria Torres and statements from Probation Officer Daniels that were in the probation report. Mr. Bonilla never provided a statement to probation. This goes far beyond simply using a person's prior statements against him.

The government argues that since the incident report was stipulated to in the criminal proceedings, then it is admissible here as part of the record of conviction. However, the government fails to cite any case law to support the notion that a stipulated factual basis would allow the IJ to disregard due process considerations when considering statements made by out of court declarants. Moreover, the cases cited by the government do not involve the admission of incident reports or probation reports.

The *Espinoza* and *Sanchez* cases speak to the admissibility of a Form I-213, a record of deportable or inadmissible noncitizen. See *Espinoza v. INS*, 45 F.3d 308 (9th

1   Cir. 1995); see also *Sanchez v. Holder*, 704 F.3d 1107 (9th Cir. 2012)). In *Espinoza*, the
2   Form I-213 was not admitted for impeachment purposes and was considered to be a
3   form "prepared in accordance with normal recordkeeping requirements." *Id*. at 310.
4   The *Espinoza* court considered that a right to cross-examine the author of a Form I-213
5   for the discrete issue of alienage would create an unwarranted burden on INS. *Id*. at
6   311. A form made during normal recordkeeping is vastly different than an incident
7   report or probation report. Incident reports and probation reports are usually authored
8   by each respective department as a way to document their investigations and the
9   statements of witnesses. This goes far beyond rote recordkeeping, particularly because
10  these reports include statements made by multiple declarants. The respondent in
11  *Espinoza* "bore the burden of demonstrating legal entry." *Id*. Notably, Mr. Bonilla's
12  removal proceedings were of a different nature than the proceedings in *Espinoza* as the
13  IJ was not considering whether Mr. Bonilla demonstrated legal entry or contested
14  issues of alienage, but rather whether Mr. Bonilla's underlying criminal conviction
15  precluded him from relief. *Espinoza* actually affirms a respondent's right to due process
16  in immigration proceedings and includes a supporting citation to a case provided by the
17  defense in its original brief. *Id*. (citing *Cunanan v. INS*, 856 F.2d 1373, 1375 (9th Cir.
18  1988)); *see also* Dkt. 40 at 10).

19       Even if the IJ's considerations were limited to Mr. Bonilla's statements in the
20  incident report for impeachment purposes, the government fails to address the fact that
21  his statement to police was not made to the officer writing the report. Mr. Bonilla
22  provided a statement in Spanish to Detective Miguel Torres who then interpreted the
23  statement into English to Detective Susan Velazquez. (*See* Def. Exh. J at
24  USAO_001310). Detective Velazquez then transcribed a summary of the statement into
25  the incident report. (*See* Def. Exh. J). This is problematic given the fact that there is no
26  information in the report as to the proficiency of the detective in translating the

7

statement, nor was the report read to Mr. Bonilla in his native language to confirm his statement was accurately translated.

Even if the incident report were properly admitted impeachment evidence as part of the record of conviction, the statements of Probation Officer Daniels and Maria Torres are not incorporated into the record of conviction and were improperly considered by the IJ. (*See* Def. Exh. J). The government notes the limited nature of the stipulated facts in the underlying conviction proceedings—highlighting that the parties stipulated to "information in the police reports," while the record remains silent as to any stipulations to the probation report. (*See* Def. Exh. J). Neither PO Daniels nor Ms. Torres were presented for cross-examination at the removal proceedings, yet specific quotes from each declarant were cited by the IJ. (*See* Def. Exh. I at USAO_000045-46). Furthermore, the IJ does not state that either of these declarants' statements are afforded less weight because they were not presented for cross-examination. In fact, it seems as though the IJ gives these statements great weight, given that the IJ specifically quotes both declarants from the probation report. (*See* Def. Exh. I at USAO_000045-46). The IJ cannot skirt Mr. Bonilla's due process rights by verbally acknowledging on the record that the incident report and probation report were admissible for impeachment purposes, only to subvert his own ruling and use the statements contained therein as substantive evidence absent a testifying declarant.

The government attempts to shift the burden back on Mr. Bonilla for not presenting affirmative evidence to attack the documents or attack the credibility of the absent declarants. However, this runs afoul of clearly established case law that keeps the burden on DHS to afford respondents with a reasonable opportunity to confront the witnesses against him or her. *Saidane v. INS*, 129 F.3d 1063, 1065 (9th Cir. 1997) (citing *Cunanan v. INS*, 856 F.2d 1373, 1375 (9th Cir. 1988.)) The burden is on DHS to make a good faith effort to present declarants for cross-examination during removal proceedings—efforts which were seemingly not made for Mr. Bonilla's removal

8

proceedings based on the records. This is a blatant violation of Mr. Bonilla's due process rights, denying him the right to cross-examine declarants whose out-of-court statements were used against him.

The government does not cite to relevant case law supporting the notion that Mr. Bonilla did not suffer prejudice when his due process rights were violated. In fact, the government cites an unpublished opinion relating to a material misrepresentation and an extrajudicial killing—none of which are at issue here. See *Radojkovic v. Holder*, 599 F.App'x 646 (9th Cir. 2015). And once again, the government cites to cases that involve a Form I-213 created by DHS and not incident reports or probation reports created by external government agencies. See *Hernandez v. Garland*, 52 F.4th 757 (9th Cir. 2022); *Espinoza*, 45 F.3d at 311; *Sanchez*, 704 F.3d. at 1109. In denying Mr. Bonilla the opportunity cross-examine the declarants who made statements against him, Mr. Bonilla could not adequately discredit, challenge, or contest the witness' credibility before the IJ. But for the IJ's reliance on aggravating facts that came from the incident report and probation report, the IJ might have considered the reports unreliable and ultimately found Mr. Bonilla eligible for relief. See *Alcaraz-Enriquez*, 19 F.4th at 1232.

**C.     Mr. Bonilla Was Deprived of Judicial Review.**

Mr. Bonilla was improperly deprived of the opportunity for judicial review. As detailed in his underlying motion, Mr. Bonilla, proceeding *pro se* at this point, mailed a petition of review to the Ninth Circuit by certified mail to ensure his filing was timely. (Def. Exh. L). Mr. Bonilla's filing was due on Friday, August 9, and according to his certified mail receipt, his filing in fact arrived on August 9. (*Id.* at 3). However, because the office did not process the filing until the following Monday, his petition was deemed untimely, and the Ninth Circuit held it had no jurisdiction to hear an untimely petition under *Magtanong v. Gonzales*, 494 F.3d 1190 (9th Cir. 2007).

First, Mr. Bonilla's petition should have been deemed timely. In *Sheviakov v. I.N.S.*, the Ninth Circuit held that so long as a petition for review "arrived on the day it

9

was due at the address specified," the panel would "not penalize a petitioner whose mail arrives at that address within the time period." 237 F.3d 1144, 1148 (9th Cir. 2001). The panel wrote, "So long as a litigant complies with our rules, we cannot fault him if the clerk's office proves unable to stamp the petition on the day it arrives." *Id.* Thus, because Mr. Bonilla's petition *arrived* at the Ninth Circuit in time, the Ninth Circuit incorrectly deemed his filing untimely.

Furthermore, as stated in the underlying motion, the Ninth Circuit relied on *Magtanong* to hold that the petition for review filing deadline was jurisdictional, a case that is no longer good law. *See Alonso-Juarez v. Garland*, 80 F.4th 1039, 1043 (9th Cir. 2023). Correctly interpreted, the deadline for petitions of review is not jurisdictional, and thus is subject to waiver and forfeiture.[3] *Id.* Thus, even if Mr. Bonilla's claim were in fact late by one day, his petition should not have been summarily dismissed.

### III. CONCLUSION

Because Mr. Bonilla was prejudiced by the due process violations in his removal proceedings, Ninth Circuit precedent requires dismissal of the indictment.

DATED: May 26, 2025           By  /s/ *Kyra Nickell*
                              KYRA NICKELL
                              JAKE CRAMMER
                              Deputy Federal Public Defender
                              Attorneys for JOSE ANTONIO BONILLA

---

[3] The government cites to *Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 192 (2017) for the argument that even mandatory claim processing rules are "unalterable" if raised by the opposing party, the Supreme Court there stated that only "*some* mandatory claim processing rules" are unalterable. (Dkt. 50 at 5). The government has not identified a case that places the petition for review deadline in this category.